Harold Tessler, J.
This is an application pursuant to section 73 of the Mental Hygiene Law on which several hearings have been held, the last by this court on February 24, 1970. Since the original filing of this application on July 29, 1969 for retention of this patient, several hearings have been held at which additional testimony and information was solicited in connection with the patient’s mental condition and, more particularly, for definitive facts and circumstances in connection with the patient’s opportunities for outside placement.
The record presented here is indeed a dismal one. This 69-year-old patient was originally hospitalized in Queens General Hospital and transferred to Kings County and thereafter transferred to Creedmoor in July, 1957. He was then suffering from a mental illness which was diagnosed as involutional psychosis-melancholia. On August 26, 1969, at the first hearing on this application, Dr. McKnight testified that he had examined the patient on August 21, 1969 and in his opinion the patient ‘ ‘ was correctly oriented in all spheres and showed no abnormal trends. His affect was grossly adequate. It is apparent that the patient should be given home leave with a view toward discharge.” The hearing was adjourned to September 9, to have the wife present. She did not appear and the matter was adjourned again to September 23. At this hearing Dr. McKnight again stated before a Justice of this court that “ The patient is ready for placement in the community.” The patient’s wife appeared with her attorney and flatly refused to take him into her home.
*831 Since that day the hospital staff has been devoting many hours in contacting members of the family including the wife and the patient’s two adult sons and others, seeking their co-operation. They have refused to co-operate and despite the hospital’s extraordinary efforts, all sources that have been appealed to have either bluntly ignored these efforts or refused to accept the slightest obligation toward the patient. (See the various reports, copies of communications to patient’s wife, her attorney, patient’s son and others.) On the adjourned date of February 17, 1970 this court was apprised of the record and the information recited above. At this hearing Dr. McKnight, the Deputy Attorney-General, the patient’s attorney, Frank J. Livoti, Esq., all stated for the record that the patient should be discharged inasmuch as he was not presently suffering from mental illness to warrant his further stay at the hospital. At the same hearing, the court spoke to the wife’s attorney on the phone, who repeated the wife’s refusal and/or inability to accept her husband. Upon the court’s inquiry, the attorney stated that he would set forth in writing to the court the income of the patient presently being received by the wife as his committee. In addition, he advised that there is an outstanding court order dated February 8, 1965, directing the payment of $250 monthly to her for her support and maintenance. At the conclusion of the hearing on February 17, the court announced that pending receipt of the attorney’s letter and consideration of the facts as disclosed in the record, the hearing would be adjourned for one week to February 24, 1970. There was no change, nor was anything further submitted. .
This patient is presently being retained simply because the hospital, the courts, the Mental Health Information Service, all have been searching and working to find a place for the patient to live outside the hospital. This must stop. Creedmoor is a New York State hospital maintained for the care and treatment of the mentally ill. It is the function of the court to determine the issue of whether the patient is mentally ill and requires further retention for those purposes. From all of the testimony and proof in this record, the court finds that it is beyond dispute that the patient is not now suffering from mental illness so as to permit or warrant his further stay at Creedmoor. In the court’s opinion, a mental hospital is not to be used as a general welfare institution for the needy or those unwelcome and unwanted by their families or next of kin.
It is apparent that the patient’s wife in particular, and the others in his family, whether selfishly, deliberately, or otherwise, will not or cannot care for him. That is their personal *832 privilege and individual choice. There may he private organizations that are available to him. However, it is not the court’s function to resolve that phase of the situation. Here the record shows that the patient has a total present income in excess of $223 per month, and should be the beneficiary of all or part of this income, especially in view of the wife’s refusal to recognize her obligations and responsibilities toward the patient either as his wife or as his committee. It appears she readily accepts the financial benefits while continuing the patient’s stay in this mental institution at the State’s expense despite his desire to be discharged and his legal ineligibility to continue therein.
In the court’s opinion, all of the facts, circumstances and proof set forth in the record, this is an intolerable situation and is contrary to the intent, contemplation and provisions of the Mental Hygiene Law. If the patient is not suffering from mental illness — ms is the patient herein — he should not be retained at this State hospital. The fact that there is no outside placement for him is not a valid reason for his retention, but merely an avoidance of and escape from the law and its purpose. The court has no quarrel with our present social consciousness and indeed subscribes to our social philosophy of “being our brother’s keeper. ’ ’ That is the way it should be, but not at the cost of its being practiced contrary to the purpose and intent of the statute.
Accordingly, the application for a retention is denied. The court directs that the patient be discharged on or before March 30, 1970, to the care and custody of his wife. Should the wife persist in her refusal to accept the patient, the court recommends that an application be made by the Attorney-General for the wife’s removal as the committee of the patient, so that any conflict of interests may be avoided and this patient’s interests and welfare best be served.
In any event, it is the court’s opinion that the patient is not now eligible to remain at Creedmoor State Hospital and is herewith ordered discharged from the latter institution, as directed above. If the wife’s home or other private facility cannot be utilized, the patient may be a proper subject for assistance from the Department of Social Services of the City of New York, subject, of course, to the eligibility rules of the latter agency in relation to financial resources, etc.